FERRY *et al. v.* SAMPSON *et al.*

*(Supreme Court, General Term, First Department.* June 19, 1888.)

PARTITION—PROOF OF ANCESTOR'S DEATH—PRESUMPTION FROM ABSENCE.

In an action for partition between tenants in common by descent it appeared that the ancestor under whom the parties claimed had not been heard from for nearly 42 years, and that they were in possession, and claiming title on the supposition that he was dead. There was but slight evidence of his death, his family seeming to have credited it on intelligence received many years ago from doubtful sources, without making an investigation. *Held,* that neither such ancestor's right to the property, nor the right of other heirs whom he might have, was barred by his absence, the doctrine of adverse possession not applying, as the tenants claimed under and not adversely to him, and therefore a purchaser at partition sale will be relieved from his purchase.

Appeal from special term.

Appeal from an order at special term granting motion of the purchaser that at a partition sale herein he be discharged from his purchase.

Argued before BRADY, P. J., and BARTLETT, J.

*Henry H. Mann,* for appellants. *De Solis Rittenband,* for respondents.

BRADY, P. J. This is an action for a partition of property held by tenants in common, by descent, from Robert Waite Armstrong and others, the parcel in controversy belonging to Robert Waite Armstrong, to whom it was devised by his father, Thomas Armstrong, who died about February 1, 1833. There is reason to suppose that Robert Waite Armstrong was a party to the probate of his father's will, but who then, being unmarried, and having his home and domicile originally in the city of New York, left that city prior to 1846, when about the age of 20 or 21 years. In a letter written in that year he stated that he was on his way home by way of New Orleans, where he would remain until spring, and then come home. It seems he had been in New York on a return from an absence, which took place prior to that year and about 1842, but no intelligence had been received from him after the letter written in 1846, to which reference has been made. His mother died prior to 1859, and some time before her death, on the assumption that Robert was dead, and she was his heir, took possession of the property, and built upon it. One of the witnesses, a nephew, stated that neither Robert nor his brother, Charles, who was also an absentee, had been heard of in his recollection for 35 years.

The evidence seems to be entirely satisfactory to the effect that nothing had been heard of or from Robert since 1846, a period now of nearly 42 years. All the proof contained in the record in relation to the death of Robert creates, however, only a presumption, and a presumption which is of little strength.

His family seems to have assumed his death to have taken place upon intelli-
.gence emanating from doubtful sources, and to have contented themselves
with the receipt of such intelligence at the time it was given, many years ago,
.and therefore made no investigation. The history of men, and particularly
those of an adventurous spirit, is not free from curious specimens of human-
ity, who from potent reasons have absented themselves from their kindred for
.a period equal to that which marks the absence of Robert W. Armstrong, and
who had in the mean time contracted matrimonial relations, and left issue.
Sometimes they have assumed that in their absence the property would nec-
essarily go to and be divided among the relatives, a result which would be
perfectly satisfactory to them, and which gave them, therefore, no concern;
.sometimes from unfortunate incidents in their lives, which must be revealed
.if they presented themselves, and which they would make any sacrifice to sup-
press. It would not make any difference, however, if Robert should be liv-
ing, or if his wife should be living, or his children should be living, whether
.he had suppressed the knowledge of his existence, or it had been accidentally
withheld from his family and his friends, inasmuch as his claim to the property
.in question or that of his family must be recognized. The doctrine of adverse
possession does not apply to assist in removing the doubt, inasmuch as the
mother took possession, claiming under her son, whom she supposed was dead,
.and held, therefore, under a title she supposed was derived through him. It is
unfortunate, perhaps, that there is not some positive law governing such an
.absence, and it may be that the legislature will some time make the proper pro-
vision with reference to it. The courts are not disposed to force upon a pur-
.chaser a title which is not marketable, and this title clearly would not be one
.of that character, inasmuch as there is reasonable doubt about the death of
Robert. For these reasons, notwithstanding the elaborate argument on the
.part of the appellant, founded upon general principles, to show that the pur-
.chaser should not be relieved of his purchase, it is thought that the learned
.judge presiding in the court below was justified in making the order appealed
from. The burden of the doubt as to the existence of Robert Waite Arm-
.strong, or of his widow and children, if either exist, must be borne by his heirs
.connected with this controversy, and it should not be imposed on the pur-
.chaser, who should receive upon the payment of his money a title which he
.could dispose of, when he thought of doing so, and without being obliged to
.overcome serious difficulties or impediments. Order appealed from affirmed,
with $10 costs and disbursements.

BARTLETT, J., concurs.